**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALICIA S., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of the Social Security | : | |
| Administration, | : | |
| Defendant. | : | NO.  25-5042 |

**<u>MEMORANDUM</u>**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                    June 30, 2026

Alicia S. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final

decision of the Commissioner of the Social Security Administration ("the Commissioner"),

denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security

Act.   Plaintiff has filed a brief in support of her request for review, the Commissioner has

responded to it, and Plaintiff has filed a reply.  For the reasons set forth below, Plaintiff's request

for review is denied.

## I.      PROCEDURAL HISTORY[1]

On June 3, 2022, Plaintiff applied for DIB, alleging that her disability commenced on

August 15, 2020.  R. 14.  The claim was denied initially, on January 20, 2023, R. 142-154, and

partially granted upon reconsideration,[2] on July 27, 2023, with a disability onset date of April 20,

2023.  R. 155-66.  On October 5, 2023, Plaintiff requested a hearing.  R. 184.  On January 29,

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of her Request for Review ("Pl. Br."), the Brief of Defendant ("Resp."), Plaintiff's Reply to Brief of Defendant ("Reply"), and the administrative record.  ("R.").

[2] The decision at the initial stage was partially favorable because, though the Commissioner determined that Plaintiff is disabled, he determined that her disability onset date began April 20, 2023, rather that August 15, 2020,  Plaintiff's alleged disability onset date.  R. 115.

2025,[3] Plaintiff appeared for a telephonic hearing *pro se*, before Malik Cutlar, Administrative Law

Judge ("the ALJ"). R. 14. Plaintiff, representing herself, and vocational expert, Ellen Levine,

("the VE"), testified at the hearing. *Id.* On March 27, 2025, the ALJ, using the sequential

evaluation process ("SEP") for disability,[4] issued a partially favorable decision.[5] R. 14-29. The

Social Security Administration's Appeals Council denied Plaintiff's request for review, on July 3,

2025, making the ALJ's decision the Commissioner's final determination. R. 1-5. Plaintiff,

proceeding *pro se*, presently seeks judicial review, and the parties have consented to this court's

jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

---

[3] On August 15, 2024, Plaintiff appeared for hearing before the ALJ but had to reschedule because Plaintiff wished to proceed *pro se*, though her non-attorney representative had not filed an official withdrawal in the case. R. 62-64.

[4] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

[5] The ALJ's decision was partially favorable because, while the ALJ determined that Plaintiff is disabled, he determined that her disability onset date was March 16, 2023, and not August 15, 2020, Plaintiff's alleged disability onset date. R. 14-15

## II.    FACTUAL BACKGROUND

A.    Personal History

Plaintiff, born on October 8, 1979, was 40 years old on her alleged disability onset date and 45 years old at the time of the administrative hearing.  R. 44.  She has an associate's degree.  *Id.*  Plaintiff has one adult son and lives with her adult daughter.  R. 49.

B.    Plaintiff's Testimony

At the January 29, 2025, hearing, Plaintiff testified that she last worked as a home health aide, however, she ceased working because of interpersonal issues and conflicts with a client and their family.  R. 44, 118-19.  Although Plaintiff had not been hired for other positions she applied to, including administrative and community support roles, she testified that she did not apply for additional home health aide positions, because she finds it difficult to work with individuals who are terminally ill.  R. 48.  She briefly worked as a youth advisor in early 2023 but was terminated after experiencing difficulties related to her hearing loss.  R. 45.

Plaintiff's physical and mental impairments, include congenital hearing loss in her left ear, progressively deteriorating hearing loss in her right ear, vision impairment, sleep apnea, psoriasis, pulmonary issues, depression, and anxiety.  R. 45, 54.  Plaintiff was previously unable to afford hearing aids; however, in early 2024, she received them through the Office of Vocational Rehabilitation.  R. 46.  Wearing hearing aids in both ears has improved her hearing, although she sometimes still misses information.  R. 47.

Plaintiff continues to receive psychotherapy treatment at the Wedge Medical Center, general medical care at the Stephen Klein Wellness Center, treatment for pulmonary issues at the Salus Institute, treatment for hearing problems at the Pennsylvania Ear Institute, and treatment for

sleep apnea and psoriasis at Temple University Hospital.  R. 49, 55.  She receives Humira[6] injections every two weeks and uses a continuous positive airway pressure ("CPAP") machine.[7] R. 49.

Plaintiff testified that she was physically assaulted in August 2024 while in the street, which caused her to remain at home more frequently and led to overeating.  R. 50.  She also underwent bariatric surgery [8] for weight loss, after which her doctor recommended that she obtain the assistance of a home health aide.  *Id.*  Plaintiff initially worked with several aides before being assigned her current one, with whom she began working in early 2024.  R. 50-51.  Her aide, who is employed by Angels on Call, helps her with food preparation and accompanies her to the library, the YMCA, and church.  R. 50-52.  The aide assists Plaintiff for eight hours per day, five to six days per week.  R. 52.  Nevertheless, Plaintiff prepares her own meals, obtains groceries from her church's food pantry, and sometimes goes to the market or attends medical appointments on her own.  R. 51.  She occasionally receives rides to her medical appointments, but at other times drives herself.  R. 50-52.

C.      Vocational Testimony

The VE classified Plaintiff's past relevant work as home health aide, semi-skilled,[9]

---

[6] Humira is a prescription medication, available in pill or injection form, used to treat a variety of autoimmune and inflammatory conditions.  It is approved to reduce the signs and symptoms of moderate to severe rheumatoid arthritis, polyarticular juvenile idiopathic arthritis, psoriatic arthritis, ankylosing spondylitis, and hidradenitis suppurativa. Humira is also used to treat moderate to severe Crohn's disease, ulcerative colitis, and chronic plaque psoriasis. *Humira*, (last visited June 7, 2026), https://www.humira.com/.

[7] "CPAP (continuous positive airway pressure) is a machine that uses mild air pressure to keep breathing airways open while you sleep."   *What is CPAP*, National Heart, Lung and Blood Institute (last visited June 7, 2026), https://www.nhlbi.nih.gov/health/cpap.

[8] Bariatric surgery is a weight-loss procedure used to treat obesity and is also effective in managing conditions such as diabetes, high blood pressure, sleep apnea, and high cholesterol. *Bariatric Surgery Procedures*, American Society for Metabolic and Bariatric Surgery (last visited June 15, 2026), https://asmbs.org/patients/bariatric-surgery-procedures/.

[9] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss,

medium,[10] performed at heavy.[11]   The ALJ asked the VE to consider a person having Plaintiff's age, education and work experience who is limited to light[12] work and who can:  read ordinary newspaper or book print, occasionally move mechanical parts, occasionally operate a motor vehicle and interact with supervisors, co-workers and the public, tolerate exposure to moderate noise level environment and occasional changes in a routine work setting, understand, remember and carry out simple instructions, and perform simple tasks at a non-production rate pace, occasionally.  R. 56.  The VE opined that, although this individual could not perform Plaintiff's past work, they could perform three, light, unskilled[13] jobs:  (1) marker, 165,000 positions in the national economy; (2) warehouse checker, 5,000 positions in the national economy; and (3) laundry worker, 18,000 positions in the national economy.  R. 57.  The VE further opined that the warehouse worker checker and laundry worker jobs exist within the moderate noise level environment.  *Id.*  The VE also opined that the added restrictions of the inability to hear simple oral instructions or being off task 15% of the time in addition to normal breaks would be work-preclusive.  *Id.*

### III.    THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

      1.    [Plaintiff] meets the insured status requirements of the Social

---

damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work."  20 C.F.R. § 404.1568(b)

[10] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[11] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."  20 C.F.R. §§ 404.1567(d), 416.967(d).

[12] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).

[13] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength."  20 C.F.R. § 404.1568(a)(c).

Security Act through December 31, 2024.

2.  [Plaintiff] has not engaged in substantial gainful activity since August 15, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  Since the alleged onset date of disability, August 15, 2020, [Plaintiff] has had the following severe impairments: bilateral sensorineural hearing loss; keratoconus (early stage); bipolar disorder; depressive disorder; and anxiety disorder (20 CFR 404.1520(c)).

4.  Since August 15, 2020, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that prior to March 16, 2023, the date [Plaintiff] became disabled, [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she was able to read ordinary newspaper or book print; could move mechanical parts occasionally, and operate a motor vehicle occasionally. She could work in a moderate noise environment; was limited to simple, routine tasks at a non-production rate pace (e.g., assembly line work); was able to occasionally interact with supervisors, coworkers, and the public; and was able to tolerate few changes in a routine work setting defined as occasional changes in a routine work setting.

6.  After careful consideration of the entire record, the undersigned finds that since March 16, 2023, [Plaintiff] has had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is able to read ordinary newspaper or book print; [Plaintiff] can move mechanical parts and operate a motor vehicle occasionally. She can work in moderate noise level environment; is limited to simple, routine tasks at a non-production rate pace; is able to occasionally interact with supervisors, coworkers, the public; is able to tolerate few changes in a routine work setting defined as occasional changes in a routine work setting; and would be unable to hear simple oral instructions.

7.      Since August 15, 2020, [Plaintiff] has been unable to perform any past relevant work (20 CFR 404.1565).

8.      Prior to the established disability onset date, [Plaintiff] was a younger individual age 18-49.  The [Plaintiff's] age category has not changed since the established disability onset date (20 CFR 404.1563).

9.      [Plaintiff] has at least a high school education (20 CFR 404.1564).

10.     Prior to March 16, 2023, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled" whether or not [Plaintiff] has transferable job skills.  Beginning on March 16, 2023, [Plaintiff] has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11.     Prior to March 16, 2023, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).

12.     Beginning on March 16, 2023, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform (20 CFR 404.1560(c) and 404.1566).

13.     [Plaintiff] was not disabled prior to March 16, 2023, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

R. 16-17, 19, 24-25, 27-29.

## IV.    DISCUSSION

A.      <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's

7

findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460

(1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.      Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff was disabled within the meaning of the Social Security Act as of March 16, 2023, not August 15, 2020, Plaintiff's alleged disability onset date. R. 14-29. Plaintiff disputes the ALJ's decision, arguing that the Commissioner: (1) erred by denying Plaintiff's claim at the initial level before receiving medical evidence and failed to reconsider such evidence once it was received, (2) improperly ignored treating-source medical opinions stating that Plaintiff cannot work due to hearing loss and cannot afford medically necessary hearing aids, (3) failed to evaluate Plaintiff's combined impairments as required by 20 C.F.R. 404.1523, (4) violated Plaintiff's due process rights by failing to accommodate her hearing disability, and (5) improperly determined Plaintiff's disability onset date based on job termination rather than her longstanding medical impairment. Pl. Br. at 2-7. The Commissioner disagrees with Plaintiff's assertions of error. Resp. at 1-14. All of Plaintiff's arguments fail.

1.  Plaintiff's First Claim is not Cognizable

Plaintiff first argues that the Commissioner's January 20, 2023, denial at the initial level was invalid because it was made on an incomplete record, namely because it did not include consideration of medical evidence that Plaintiff submitted on April 17, 2023.  Pl. Br. at 3.  This argument fails.  A federal court may only review the "final decision" of the Commissioner of Social Security.   42 U.S.C. § 405(g) ("Any individual, after **any final decision** of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy**, may obtain a review of such decision**") (emphasis added).

Here, since the Security Administration's Appeals Council denied Plaintiff's request for review, on July 3, 2025, the ALJ's decision is the Commissioner's final determination.  However, Plaintiff complains of the Commissioner's decision at the *initial* level, which was rendered on January 20, 2023.  Pl. Br. at 4.  Since then, the Commissioner reviewed all evidence in the record when he issued a partially favorable decision upon reconsideration, on July 27, 2023, R. 155-66, and when the ALJ issued a partially favorable decision on March 27, 2025.  R. 14-29.

2.  The ALJ Properly Ignored Statements Concerning Plaintiff's Ability to Work

Next, Plaintiff argues that the ALJ ignored "treating-source opinions" by Clinical Audiologist, Dr. Anna Bixler.  Pl. Br. at 3.  This argument fails because the statements are not medical opinions.

The governing regulations require an ALJ to explicitly consider supportability and consistency when evaluating medical opinions.  20 C.F.R. § 404.1520c(b)(2). A medical opinion is a statement from a "medical source about what [a Plaintiff] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1523.   The statements that Plaintiff refers to are not medical opinions, nor are

they statements made by Dr. Bixler.  Instead, they are memorialization of reports from Plaintiff to

Dr. Bixler regarding her impairments:

> [Plaintiff] reports hearing loss since childhood.
> [Plaintiff] reports the following challenges
> -difficulty understanding speech in every environment
> -difficulty finding and keeping a job due to hearing loss and communication
> difficulties
> …
> [Plaintiff] reports she unfortunately cannot afford hearing aids at this time
> (cannot work due to hearing loss), but would like assistance filling out
> paperwork for social security and disability benefits.

R. 1270.  Accordingly, the ALJ did not have to discuss these statements, particularly any statement

that Plaintiff is disabled and unable to work, as those determinations are reserved to the

Commissioner.  20 C.F.R. § 404.1520b(c)(3)(i)-(iv).

      3.   The ALJ Evaluated Plaintiff's Impairments in Combination

Third, Plaintiff argues that the ALJ failed to consider her combined impairments because

"[h]earing loss, vision impairment, PTSD, anxiety, and depression were treated as isolated

conditions rather than as an integrated disability profile" in violation of 20 C.F.R. § 404.1523.  Pl.

Br. at 4.  This argument fails.

The ALJ considered Plaintiff's impairments individually and in combination.  When

determining that Plaintiff had severe impairments, the ALJ stated that, since August 15, 2020,

Plaintiff's "impairments are established by the medical evidence because the medical and

nonmedical evidence show that they, **both individually or in combination**, are more than a slight

abnormality and have more than a minimal effect on the claimant's ability to work as required by

SSR 85-28."  R. 17 (emphasis added).  The ALJ further decided that, since August 15, 2020,

Plaintiff's impairments "**considered singly and in combination**, [do] not meet or medically equal

the criteria of any impairment listed in 2.00 Special Senses and Speech (including listings 2.02

Loss of Central visual acuity, 2.03 Contraction of the visual fields in the better eye, 2.04 Loss of

visual efficiency, and 2.10 Hearing loss not treated with cochlear implantation) and 12.00 Mental Disorders (including listings 12.04 Depressive, bipolar and related disorder and 12.06 Anxiety and obsessive-compulsive disorders)."  R. 17 (emphasis added).

Also, the ALJ discussed the record, addressed each of Plaintiff's impairments at length at each stage of the analysis, and submitted a hypothetical question to the VE that included limitations based on each of Plaintiff's impairments.  R. 16-29.  This is clear evidence that the ALJ considered Plaintiff's impairments individually and in combination with each other.  *See Williams v. Barnhart*, 87 F. App'x 240, 242 (3d Cir. 2004) (nonprecedential) (holding that the ALJ discussed Plaintiff's combined impairments as required by 20 C.F.R. § 404.1523 because he discussed the medical evidence at length, addressed Plaintiff's impairments at each stage, and submitted a hypothetical question to the VE that included limitations based on each impairment).  Indeed, to the extent Plaintiff argues that her "integrated disability profile" should be a depiction of her combined impairments, the hypothetical that the ALJ submitted to the VE, and the resulting Residual Functioning Capacity that the ALJ created, captures the combined effects of Plaintiff's impairments and associated limitations.  R. 24-27.

4.  The ALJ did not Violate Plaintiff's Due Process Rights

Next, Plaintiff argues that the ALJ violated her due process rights by failing to "adjust communication methods" during the hearing.  Pl. Br. at 4.  This argument fails for several reasons. First, Plaintiff's assertion that the commissioner erred because he "relied on standard phone-based communication and procedures without reasonable accommodation" is too vague.   Pl. Br. at 3. There is no evidence in the record that Plaintiff requested an alternative venue for the hearing, such as videoconference or in-person.  In fact, Plaintiff agreed to participate in a telephonic hearing on August 15, 2024, when she appeared before the ALJ by videoconference and had to reschedule,

R. 63, and on January 29, 2025, when she confirmed her consent to proceed with the hearing by telephone. R. 40-41. Further, at no point during the January 29, 2025, hearing did the Plaintiff request to stop the hearing due to hearing difficulties. Indeed, while proceeding *pro se*, she only requested the ALJ to repeat himself one time, R. 52, indicating that she had minimal difficulties hearing the ALJ.

     5.   <u>Plaintiff's Disability Onset Date is Supported by Substantial Evidence</u>

Lastly, Plaintiff argues that the ALJ improperly based her disability onset date on the date Plaintiff was terminated from employment due to hearing problems, rather than on the medical evidence of her bilateral, progressive hearing loss from as early as 2011.[14] Pl. Br. at 2-7. This argument fails. The ALJ's determination that Plaintiff's disability began on March 16, 2023, rather than on the alleged onset date of August 15, 2020, is supported by substantial evidence because the ALJ relied on both medical and employment evidence.

The ALJ considered medical and employment evidence and determined Plaintiff's impairments were adequately managed as of her alleged onset date of August 15, 2020,[15] but that medical and employment evidence indicated that those impairments progressively worsened and became disabling by March 16, 2023. R. 19-27. The ALJ determined that Plaintiff's past relevant work as a home health aide from August 2019 through October 2021 was SGA. R. 27. Accordingly, Plaintiff could not have been disabled under the regulations. 20 C.F.R. § 404.1571. The ALJ also considered medical evidence of Plaintiff's psychiatric treatment at the Wedge. R. 24. Treatment notes indicate that the majority of her weekly sessions occurred over the phone,

---

[14] The court will focus on evidence regarding Plaintiff's hearing loss rather than other impairments, as this impairment, Plaintiff asserts, is what is disabling. Pl. Br. at 4.

[15] While Plaintiff asserts that evidence regarding her bilateral hearing loss dates back until 2011, the court will only consider evidence from Plaintiff's alleged disability onset date, through Marh 16, 2023, the established disability onset date.

and the progress notes reflect only five instances in which Plaintiff reported difficulty hearing between August 25, 2020, and December 2021.  R. 694-930.  The ALJ also considered evidence from Temple University showing that Plaintiff's physical condition appeared to be managed from 2021 through May 2022.  R. 21.  Notes from Plaintiff's visits indicate that she denied any complaints.  R. 1161.  Plaintiff's physicians at Temple recommended that she obtain hearing aids. *Id.*  The ALJ also considered a June 1, 2022, appointment with Plaintiff's otolaryngologist, Dr. Fitzgerald, who noted Plaintiff's reported lifelong hearing loss.  R. 22, 1242.  However, Dr. Fitzgerald observed moderately reduced word-recognition scores in Plaintiff's right ear and severely reduced scores in her left ear, and he recommended that she obtain new bilateral hearing aids "to remedy her hearing loss."  R. 1241-42.

Then, the ALJ considered employment evidence showing that Plaintiff was able to apply for and obtain full-time employment as a youth advisor at Covenant House in early 2023, indicating that she could perform SGA.  R. 22.  However, on March 16, 2023, Plaintiff's employer placed her on leave so that she could be evaluated for her hearing loss, which at that time limited her ability to communicate effectively and hear others, even at short distances.  R. 22.  The ALJ noted that this evidence reflected the progressive deterioration of Plaintiff's hearing impairment and its effect on her ability to perform the essential functions of her position.  R. 22.

Based on this medical and employment evidence, the ALJ concluded that Plaintiff became statutorily disabled on March 16, 2023,[16] the date her employer placed her on leave and requested

---

[16] Indeed, the ALJ's finding that Plaintiff became disabled on March 16, 2023, appears generous.  The record reflects that Plaintiff's providers repeatedly recommended that she obtain hearing aids before that date.  R. 1161, 1241.  Yet Plaintiff did not have hearing aids when she worked at Covenant House in early 2023, despite evidence that she had struggled with progressively deteriorating hearing loss for many years.  *Id.*  At the administrative hearing, Plaintiff testified that she did not obtain hearing aids until early 2024, after her employment at Covenant House ended.  R. 46. Plaintiff further testified that the hearing aids improved her hearing, although she continued to miss things on occasion. R. 47.  This testimony undermines Plaintiff's argument that she was disabled as of August 15, 2020.  If Plaintiff's hearing improved with hearing aids obtained in 2024, the ALJ could have reasonably inferred that her untreated hearing loss was not necessarily indicative of a disabling impairment throughout the entire period beginning in August

further medical evaluation, because her hearing impairment prevented her from performing essential job functions.  R. 25.  This evidence constitutes more than a mere scintilla of evidence, and a reasonable mind could accept it as adequate to support the ALJ's conclusion that Plaintiff's impairments were not severe enough to prevent her from engaging in SGA before March 16, 2023. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

      Accordingly, Plaintiff's request for review is denied.

---

2020.  Moreover, despite her hearing difficulties, Plaintiff was able to obtain and perform full-time work at Covenant House in early 2023, demonstrating a potential ability work well after her alleged onset date. 20 C.F.R. § 404.1571.